# In the United States Court of Federal Claims

No. 16-268C
(Filed: April 10, 2017)

```
*************************************
CANPRO INVESTMENTS LTD.,             *
                                     *
            Plaintiff,               *
                                     *
                                     *   Motion for Reconsideration; RCFC
v.                                   *   59(a)(1); Implied Duty of Good Faith and
                                     *   Fair Dealing
THE UNITED STATES,                   *
                                     *
            Defendant.               *
*************************************
```

Esperanza Segarra, Coral Gables, FL, for plaintiff.

Amanda L. Tantum, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

     Defendant moves, pursuant to Rule 59(a)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), for partial reconsideration of the court's January 26, 2017 ruling on defendant's motion to dismiss. For the reasons set forth below, the court denies defendant's motion for reconsideration.

### I. BACKGROUND

     In this case, plaintiff CanPro Investments Ltd. ("CanPro") seeks damages pursuant to a lease with the United States General Services Administration ("GSA") for commercial space to house a local office of the Social Security Administration ("SSA"). Plaintiff also seeks termination of the lease. Descriptions of the lease negotiation process, events occurring after execution of the lease giving rise to the alleged breach, and the conflict's procedural history are provided in the court's opinion and order granting in part and denying in part defendant's motion to dismiss pursuant to RCFC 12(b)(1) and 12(b)(6) ("RCFC 12(b) ruling") and need not be repeated herein. See CanPro Invs. Ltd. v. United States, 130 Fed. Cl. 320, 331-34 (2017). In its RCFC 12(b) ruling, the court dismissed the majority of plaintiff's claims, leaving intact only "the portion of Count IV of the complaint [for breach of the implied duty of good faith and fair dealing] premised on the allegation that the SSA's use of the leased space at One Park Place is unreasonable and beyond the use intended by the parties." Id. at 352. See generally id. at 347-50. The court also determined that it may properly consider money damages and/or termination of the lease as potential remedies. Id. at 350-52.

Defendant now moves for reconsideration and/or clarification, arguing that it never had a chance "to engage in a debate about the meaning of [Solicitation for Offers ("SFO")] Clause 5.13 and an implied duty of good faith and fair dealing arising from it." Def.'s Mot. 4. In its entirety, Clause 5.13 of the SFO, titled "Waiver of Restoration," provides:

> The Lessor hereby waives, releases and discharges, and forever relinquishes any right to make a claim against the Government for waste, damages, or restoration arising from or related to (a) <u>the Government's normal and customary use of the leased premises during the term of the lease</u> (including any extensions thereof), as well as (b) any initial or subsequent alteration to the leased premises, including cabling, or removal thereof, during the term of this lease (including any extensions thereof), where such alternations or removals are performed by the Lessor or by the Government with the Lessor's consent, which shall not be unreasonably withheld. The Government may, at its sole option, abandon property in the leased space following expiration of the Lease, in which case the property will become the property of the Lessor and the Government will be relieved of any liability in connection therewith.

Compl. Ex. A at 39 (emphasis added). The court previously explained that this clause "precludes recovery by CanPro for the 'normal and customary use of the leased premises during the term of the lease' by the GSA and/or the SSA. In other words, the GSA and/or the SSA are required to use One Park Place in a 'normal and customary' manner." <u>CanPro</u>, 130 Fed. Cl. at 348 (citation omitted).

According to defendant, however, Clause 5.13 of the SFO "cannot create an express duty on the Government to engage in 'normal and customary use' while it is leasing the office space within One Park Place." Def.'s Mot. 4-5. Rather, defendant avers, this clause "is properly read to acknowledge the standard implied covenant that a lessee will, at the end of the lease, restore leased premises to their original condition . . . ." <u>Id.</u> at 5. Defendant also contends that Clause 5.13 does not give rise to an ambiguity, <u>see generally</u> <u>id.</u> at 9-11, and that the court should, "at a minimum, afford the parties an opportunity to support their interpretations of [Clause 5.13] and develop factual arguments," <u>id.</u> at 12.

On the other hand, plaintiff argues that there has been no "intervening change in controlling law," no "previously unavailable evidence," and no "manifest injustice upon [defendant]" to justify defendant's motion. Pl.'s Resp. 3. Plaintiff emphasizes that defendant has already "had the opportunity to respond" to plaintiff's allegations that the SSA "breached the Lease as a result of conduct that is not reasonable and not within the intended purpose of the Lease, specifically the volume of the [SSA] visitors in excess of the accepted load rate for the Leased premises and the building." <u>Id.</u> at 4. Plaintiff observes that it specifically discussed the obligation for the SSA to "occupy the leased premises in a manner that is consistent with what is <u>reasonable</u> for the intended use of the premises and in compliance with the load rate of the building" in its complaint, and that it attached relevant documents, including the lease itself, to

the complaint. Id. at 4-5 (citing Compl. ¶¶ 7, 9, 12, 22, 86).  Plaintiff avers that "the exhibits to the Complaint, and specifically Clause 5.13 [of the SFO] . . . , are consistent with the allegations in the Complaint and other provisions of the Lease referred to by CanPro and considered by the Court . . . ." Id. at 6.  Plaintiff also argues that Clause 5.13 is not limited to restoration, and does not restrict "CanPro's ability to bring claims against the Government at any time for 'waste, damages, or restoration' that are based on conduct by the Government 'during the term of the lease' that is not 'normal and customary use of the leased premises.'" Id. at 11 (quoting Compl. Ex. A at 39).

In reply, defendant stresses that the court's interpretation of Clause 5.13 of the SFO "works a manifest injustice" because it "must defend against a claim now grounded for the first time in a reading of the contract that [defendant] could not have countered." Def.'s Reply 3. According to defendant, plaintiff "did not claim to have relied [upon Clause 5.13]" in its complaint, id. at 4, and thus "the Court's finding of a latent ambiguity in the lease" was improper, id. at 17.  In other words, defendant suggests, plaintiff is attempting to "change the basis of its claims from those in its complaint." Id. at 20.  Defendant asserts that the SSA's "'normal and customary use of the lease[d] premises during the term of the lease' is . . . a condition for the waiver [of a claim for restoration] to apply," id. at 9, and that if the SSA "use[s] the leased premises in a way that is not 'normal and customary' . . . the waiver will not apply," id. at 10.  Therefore, defendant avows, "the lease contains no duty or implied duty related to the Government's use or the number of visitors that could have been breached." Id. at 12.

The motion is fully briefed, and the court considers oral argument unnecessary.

## II.  DISCUSSION

### A.  Standard of Review

A motion for reconsideration is a request for "extraordinary" relief and is not an avenue for a dissatisfied party to simply relitigate the case. Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004); Four Rivers Invs., Inc. v. United States, 78 Fed. Cl. 662, 664 (2007); Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd per curiam, 250 F.3d 762 (Fed. Cir. 2000) (unpublished table decision).  Thus, such a motion does not allow a party to raise arguments that it failed to raise previously or reassert arguments that have already been considered. Four Rivers Invs., 78 Fed. Cl. at 664.  Pursuant to RCFC 59(a)(1), the court "may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice." Biery v. United States, 818 F.3d 704, 711 (Fed. Cir. 2016) (internal quotation marks omitted).  A decision on a motion for reconsideration is within the discretion of the trial court. See Entergy Nuclear FitzPatrick, LLC v. United States, 711 F.3d 1382, 1386 (Fed. Cir. 2013) (explaining that a decision on a motion for reconsideration is reviewed on appeal for abuse of discretion).

**B. The Implied Duty of Good Faith and Fair Dealing Is Not an Express Contractual Duty**

In its motion for reconsideration, defendant does not argue that there has been an intervening change in the law or that it possesses newly discovered evidence. Rather, it contends that the court erroneously imputed an implied duty of good faith and fair dealing on the part of the GSA and/or the SSA. The implied duty of good faith and fair dealing is, as made clear by its name, not an express contractual duty. It exists "because it is rarely possible to anticipate in contract language every possible action or omission by a party that undermines the bargain." Metcalf Constr. Co. v. United States, 742 F.3d 984, 990 (Fed. Cir. 2014). "Failure to fulfill [the implied duty of good faith and fair dealing] constitutes a breach of contract" in the same manner as does failure to fulfill an express contractual duty, id., demonstrating that the implied duty of good faith and fair dealing and express contractual duties are distinct, albeit related, concepts.

Defendant states that "[a]n implied duty of good faith and fair dealing 'must attach to a specific substantive obligation.'" Def.'s Reply 14 (quoting Austin v. United States, 118 Fed. Cl. 776, 789 (2014)). However, defendant's reliance on Austin is misplaced. The original source of the quotation upon which defendant relies is Alaska v. United States, 35 Fed. Cl. 685, 704 (1996). In Alaska, the court refused to allow the plaintiff to use the implied duty of good faith and fair dealing to force the federal government to "open up specific federal lands to generate additional revenue for [the plaintiff]" in light of a revenue-sharing provision in the Alaska Statehood Act. Id. (citing Alaska Statehood Act, Pub. L. No. 85-508, § 28(b), 72 Stat. 339, 351 (1958) (codified as amended at 30 U.S.C. § 191 (1994))). Doing so, the court explained, would run counter to the provisions of the Alaska Statehood Act because there was "no such express substantive obligation" contained therein directing that specific lands be opened. Id. In other words, the court did not allow the implied duty of good faith and fair dealing to mandate specific actions that were not required by law. Requiring the implied duty of good faith and fair dealing to literally "attach" to a specific contractual duty, rather than be grounded in contractual provisions generally to ensure that the reasonable expectations of the parties are respected, improperly expands the import of the Alaska court's statement. Moreover, such a reading would render the implied duty wholly superfluous. The United States Court of Appeals for the Federal Circuit has recognized as much. See, e.g., Centex Corp. v. United States, 395 F.3d 1283, 1306 (Fed. Cir. 2005) ("Indeed, it would be inconsistent with the recognition of an implied covenant if we were to hold that the implied covenant of good faith and fair dealing could not be enforced in the absence of an express promise . . . .").

Therefore, defendant's argument that a party must base an allegation concerning breach of the implied covenant of good faith and fair dealing upon a specific "substantive obligation within the [contract]," Def.'s Reply 4, lacks merit. Although "[t]he implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions," Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 831 (Fed. Cir. 2010), a party need not breach an express contractual duty to breach the implied duty of good faith and fair dealing. An aggrieved party need only show interference with its "reasonable expectations . . . regarding the fruits of the contract." Centex, 395 F.3d at 1304; accord Restatement (Second) of Contracts § 205 cmt. a (Am. Law Inst. 1981) ("Good faith performance . . . of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party . . . .").

### C. The SSA Must Use the Leased Premises in a Reasonable Manner

In its RCFC 12(b) ruling, the court determined that Clause 5.13 of the SFO shows that "the GSA and/or the SSA are required to use One Park Place in a 'normal and customary' manner." CanPro, 130 Fed. Cl. at 348 (quoting Compl. Ex. A at 39). Defendant argues that such a determination was improper, emphasizing that this so-called "normal and customary use" provision cannot be read to require the GSA and/or the SSA to use leased premises in any particular matter during the pendency of the lease.

Defendant may be correct that Clause 5.13 of the SFO, standing alone, only addresses the condition in which the GSA and/or the SSA must return the premises to plaintiff. The court is also mindful of the principle that a tenant may generally use leased premises for "whatever lawful purpose it so desires" absent a valid restriction. Forman v. United States, 767 F.2d 875, 880 (Fed. Cir. 1985). Further, the lease does not contain an express limitation on the number of daily visitors to the SSA's office at One Park Place that may be scheduled and accommodated. However, there is more to the inquiry. Pursuant to the implied duty of good faith and fair dealing, the SSA's use of its office and the common areas at One Park Place is subject to the reasonable expectations of the parties.

Assuming—without deciding—that Clause 5.13 of the SFO does not require the GSA and/or the SSA to use One Park Place in a particular manner, as defendant stresses, the clause nevertheless demonstrates that a "normal and customary use of the leased premises" exists, whatever it may be. Even without such a provision, it would contravene logic to conclude that there is no "normal and customary use" of leased premises when the lease is signed for a specific purpose.[1] Pursuant to the implied duty of good faith and fair dealing, plaintiff can reasonably expect a tenant, such as the SSA, to act in accordance with the "normal and customary use" of the premises. Thus, the court need not address defendant's argument regarding the scope of Clause 5.13 because the clause's scope is inconsequential to the SSA's duty to act reasonably under the implied duty of good faith and fair dealing.

Moreover, even setting aside Clause 5.13 of the SFO altogether, the GSA's and/or the SSA's use of One Park Place during the pendency of the lease must be "consistent with the design and construction of the property." Forman, 767 F.2d at 880. Since building specifications were part of the lease, see, e.g., Compl. Ex. A at 8, 12, requiring the GSA and/or the SSA to act in accordance with the "design and construction" of the premises under the implied duty of good faith and fair dealing does not run counter to the lease's provisions. See Precision Pine, 596 F.3d at 831 (explaining that the implied duty of good faith and fair dealing cannot "create duties inconsistent with the contract's provisions"). Defendant correctly stresses that there is no express provision of the lease limiting the daily visitor volume to the SSA office, but apparently fails to recognize that there also is no express provision of the lease allowing an unlimited volume of daily visitors.

---

[1] Here, the lease was allegedly executed for the purpose of housing a local SSA office. Compl. ¶ 23.

In sum, the existence of a provision addressing the "normal and customary use" of the premises (whatever it may be), the incorporation of building specifications into the lease, and basic common sense—or any of these, standing alone—indicate that defendant cannot plausibly argue that the parties reasonably expected an unlimited number of daily visitors to the SSA office at One Park Place. In its RCFC 12(b) ruling, the court discussed the parties' conflicting reasonable interpretations of the lease vis-à-vis the daily visitors scheduled and accommodated by the SSA, and concluded that the existence of two reasonable interpretations created a latent ambiguity since plaintiff alleged that it had relied on its interpretation in entering into the lease. CanPro, 130 Fed. Cl. at 333, 349. Defendant's contention that there is no limitation to a particular visitor volume is correct, see id. at 349, but extending this to mean that the SSA can accommodate literally any volume of daily visitors, and still remain in compliance with the lease, is nonsensical. In other words, an implied duty on the part of the SSA to limit its daily visitor volume to a reasonable number, whatever that number may be, does not run counter to any express provisions of the lease or the reasonable expectations of the parties as alleged by plaintiff.

### D. There Has Been No Manifest Injustice

The implied duty on the part of the SSA to limit its daily visitor volume to a reasonable amount is entirely consistent with the surviving allegations in plaintiff's complaint.[2] Therefore, plaintiff is not, as defendant insists, changing the basis of its claim. Thus, no amended complaint is necessary. Further, plaintiff's certified claim, complaint (including attachments), and compliance with RCFC 9(k)'s pleading requirements provided defendant with proper notice of plaintiff's claim and its underlying basis. See CanPro, 130 Fed. Cl. at 338-39. Because defendant had sufficient notice of the claim against it, litigating the claim does not place defendant at an unfair disadvantage or cause defendant to suffer a manifest injustice.

### III. CONCLUSION

The court has considered all of the parties' arguments. To the extent not discussed herein, the court finds them unpersuasive or without merit.

The court did not err in determining that plaintiff has pled a plausible breach-of-contract claim "with respect to the portion of Count IV of the complaint premised on the allegation that the SSA's use of the leased space at One Park Place is unreasonable and beyond the use intended by the parties." CanPro, 130 Fed. Cl. at 352. Therefore, plaintiff is "entitled to offer evidence" in support of that claim. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Whether plaintiff will ultimately prevail is another matter entirely, but that is not the issue at this stage of the case. Defendant will also have ample "opportunity to support [its] interpretations of [the lease] and develop factual arguments," Def.'s Mot. 12, throughout discovery and further proceedings.

---

[2] These allegations constitute "a short and plain statement of the claim showing that [plaintiff] is entitled to relief" pursuant to RCFC 8(a)(2).

For the foregoing reasons, defendant's motion for reconsideration and/or clarification is **DENIED**. The court also **DENIES AS MOOT** plaintiff's motion to file a sur-reply regarding the instant motion. Defendant shall file its answer **by no later than Monday, April 24, 2017**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge

For the foregoing reasons, defendant's motion for reconsideration and/or clarification is **DENIED**. The court also **DENIES AS MOOT** plaintiff's motion to file a sur-reply regarding the instant motion. Defendant shall file its answer **by no later than Monday, April 24, 2017**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge