# In the United States Court of Federal Claims

No. 16-268C
(Filed: February 8, 2023)
**FOR PUBLICATION**

```
***************************************
CANPRO INVESTMENTS, LTD.,              *
                                       *
            Plaintiff,                 *
                                       *
v.                                     *
                                       *
THE UNITED STATES,                     *
                                       *
            Defendant.                 *
                                       *
***************************************
```

*Marcos Reilly*, Hinshaw & Culbertson LLP, Chicago, IL, for Plaintiff.

*Amanda L. Tantum*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant, United States. With her on briefs were *Brian M. Boynton*, Acting Assistant Attorney General, *Martin F. Hockey, Jr.*, Acting Director, *Claudia Burke*, Assistant Director, as well as *Michael Converse*, Assistant General Counsel, Office of General Counsel, Real Property Division (LR), U.S. General Services Administration.

## OPINION AND ORDER

Plaintiff CanPro Investments, Ltd. ("CanPro") brings claims arising from a lease with the General Services Administration ("GSA"). *See generally* Compl. (ECF 1); Am. Compl. (ECF 156). Three motions, all submitted by Defendant, are currently before the Court. The first is a portion of Defendant's second motion to dismiss the original complaint.[1] Briefing on that issue was stayed, as discussed below, pending resolution of CanPro's second certified claim under the Contract Disputes Act ("CDA"). *See* Order (ECF 109). The next motion, also responding to the initial complaint, is a motion to dismiss, or alternatively, a motion for summary judgment.[2] The last motion — responding to an amended complaint that Plaintiff filed after the second certified claim was denied — is a motion to strike, or alternatively, a motion

---

[1] Def.'s Mot. to Dismiss ("Def.'s Mot. No. 2") (ECF 87).
[2] Def.'s Mot. to Dismiss, or, Alternatively, Mot. for Summ. J. ("Def.'s Mot. No. 3") (ECF 129); Pl.'s Am./Corr. Resp. ("Pl.'s Resp. No. 3") (ECF 150); Def.'s Reply ("Def.'s Reply No. 3") (ECF 146).

to dismiss.[3] The portion of Defendant's Motion No. 2 currently pending before this Court (§ II.B) has been overtaken by subsequent procedural developments and is therefore **DENIED AS MOOT**. As for the remaining two motions, Defendant's Motion No. 3 is **GRANTED IN PART** and **DENIED IN PART**; Defendant's Motion No. 4 is **GRANTED IN PART** as to jurisdiction arising from Plaintiff's second CDA claim and to the extent its arguments overlap with Motion No. 3, and otherwise **DENIED**.

## BACKGROUND

CanPro manages commercial rental properties in Florida. In 2012, CanPro and GSA executed Lease No. GS-04B-62453 for space on the fourth floor of One Park Place, a multistory commercial building in Boca Raton. Pl.'s Ex. A (ECF 156-1) at 2.[4] The space was to be used for the South Palm Beach field office of the Social Security Administration ("SSA"). *Id.* at 1. The lease incorporated a clause waiving CanPro's right to make a claim against its tenant for any damages relating to the government's "*normal and customary use* of the leased premises during the term of the lease." *Id.* at 39 § 5.13 (emphasis added).

When a nearby SSA field office closed in August 2014, visitor traffic at the SSA office at One Park Place increased dramatically. *See generally* Def.'s App'x ("Def.'s App'x No. 3") (ECF 129-1 and 129-2) at 146–47.[5] In its first certified CDA claim, CanPro informed the GSA that "[v]isitors to SSA's offices regularly exceed[ed] 400 to 500 persons per day," even though "it was understood by all parties that SSA's intended volume of visitors would … not exceed 250 visitors per day." Def.'s App'x No. 2 at 4 ¶¶ 4–5; *see generally* 41 U.S.C. § 7103(a)–(b). CanPro alleged that the result was "overcrowding … creating noise, distractions, and disruption to One Park Place's other tenants[.]" Def.'s App'x No. 2 at 5 ¶ 7. CanPro also claimed that SSA's visitors engaged in behavior inappropriate for its commercial space. *Id.* at 6 ¶ 12. Plaintiff alleged $250,000 in breach of contract damages. *Id.* at 8 ¶ 23.

The GSA contracting officer denied Plaintiff's claim in 2015, *see* Compl. at 2 ¶ 6; Pl.'s Ex. B at 1–3, leading CanPro to file suit in this Court seeking damages and termination of the lease. The government moved to dismiss, and the Court dismissed

---

[3] Def.'s Mot. to Strike, or, Alternatively, Mot. to Dismiss Pl.'s Am. Compl. ("Def.'s Mot. No. 4") (ECF 165); Pl.'s Resp. ("Pl.'s Resp. No. 4") (ECF 168); Def.'s Reply ("Def.'s Reply No. 4") (ECF 173). Defendant's Motion No. 4 also includes a request for consideration of its previous motion.
[4] Plaintiff's evidence is contained primarily in four exhibits (Exhibits A–D), each separately attached to its amended complaint (ECF 156). Since CanPro's exhibits are not paginated, this Opinion relies on the electronic filing system's pagination.
[5] Defendant's evidence is contained in three sets of appendices attached to its respective motions. Defendant's Motion No. 2 was accompanied by Appendix No. 2 (ECF 87-1), Motion No. 3 by Appendix No. 3, and Motion No. 4 by Appendix No. 4 (ECF 165-1).

all of CanPro's claims except for alleged breach of the duty of good faith and fair dealing. *See* Def.'s Mot. to Dismiss ("Def.'s Mot. No. 1") (ECF 8); Order & Opinion (ECF 20) at 25. The Court interpreted the provision of the lease referencing "normal and customary use" to mean that the SSA was, in fact, "obligated to limit the daily visitor volume to its office," which the Complaint alleged the SSA failed to do. *Id*. Among other issues the Court addressed, the Court dismissed CanPro's claim for breach of contract based on "superior knowledge" for lack of jurisdiction because it had not been presented to the contracting officer. *See* Order & Opinion at 9–10.

Following the Court's decision, CanPro submitted its initial disclosures. After a series of amendments, its seventh and final amended initial disclosures asserted a range of approximately $36–$42 million in damages. *See* Def.'s App'x No. 2 at 97. The bulk of this figure was based on loss of tenants (approximately $16 million) and loss of property value ($20–$25 million). *Id*. at 96–97. CanPro also asserted "Other Lost Profits" valued at "TBD." *Id*. at 97.

Defendant then filed another motion to dismiss. *See generally* Def.'s Mot. No. 2. Most relevant now, the government argued in § II.B that CanPro failed to present its claims regarding loss of tenants and declines in property value to the contracting officer as the CDA requires. *See id*. at 12–18.

While that motion was pending, CanPro submitted a second claim to the contracting officer covering those economic losses and the previously dismissed superior knowledge claim. Pl.'s Ex. D at 6–7. This Court stayed resolution of § II.B pending the contracting officer's decision. *See* Order (ECF 92) at 1–2; *see also* Opinion & Order (ECF 122) at 11. CanPro's second CDA claim has since been denied by the contracting officer as well. *See* Def.'s App'x No. 4 at 6.

That brings us to the remaining filings at issue today. The government once again moved to dismiss CanPro's claim for breach of the duty of good faith and fair dealing, or, in the alternative, for summary judgment. *See generally* Def.'s Mot. No. 3. While that motion was pending, CanPro filed an amended complaint — without moving for the Court's leave or confirming the government's consent — that added certain new factual allegations, introduced the economic losses presented in its second claim to the contracting officer, and repleaded the previously dismissed claim for superior knowledge. *See generally* Am. Compl. The government responded with another motion to strike the amended complaint or, in the alternative, to dismiss the issues it presented, including the economic loss and superior knowledge claims. Def.'s Mot. No. 4.

## DISCUSSION

### I. Failure to Obtain Leave to File Amended Complaint

As mentioned, CanPro filed its amended complaint without seeking the Court's leave or obtaining the government's consent. The government argues that was improper under RCFC 15(a), and that the amended complaint should therefore be stricken. Def.'s Mot. No. 4 at 8–9. I conclude that it is unnecessary to strike the amended complaint.

The time for CanPro to amend its complaint as of right had expired by the time the amended complaint was filed. *See* RCFC 15(a)(1). The Rules permitted CanPro to "amend its pleading only with the opposing party's written consent or the court's leave," but provided that the Court "should freely give leave when justice so requires." RCFC 15(a)(2).

The factors that typically justify denying leave to amend — *e.g.*, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," *see Dixon v. United States*, 158 Fed. Cl. 80, 84 (2022) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) — are not present here. Rather, the lack of advance leave or consent appears to have resulted from misunderstandings or miscommunications. *See* Pl.'s Resp. No. 4 at 2–3. Under the circumstances, the fairest and most efficient resolution is to accept the amended complaint and address the government's dismissal and summary judgment arguments on the merits to the extent they are applicable to the amended complaint. *See Big Oak Farms, Inc. v. United States*, 105 Fed. Cl. 48, 50 n.1 (2012) (citing Wright & Miller, 6 Fed. Prac. & Proc. Civ. 1476 (3d ed.)). The government agrees that approach is satisfactory. Tr. of Oral Arg. ("Tr.") (ECF 179) at 67.

I therefore accept Plaintiff's amended complaint as the operative pleading. Defendant's Motion No. 4 is denied insofar as it requests that the amended complaint be stricken.

### II. Partial Dismissal for Lack of Jurisdiction

The government moves to dismiss all or part of the case for lack of jurisdiction under RCFC 12(b)(1). First, the government challenges CanPro's standing, arguing that CanPro's alleged harms result from the independent acts of third parties. Def.'s Mot. No. 3 at 23–29. Second, the government moves to dismiss CanPro's requests for economic damages — the losses covered in CanPro's second CDA claim — because CanPro did not adequately present them to the contracting officer. Def.'s Mot. No. 4 at 13–19. I agree with the latter argument, but not entirely with the former.

### A. Standing

"Standing is a threshold jurisdictional issue." *Myers Investigative & Security Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (citing *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008); *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 185 (2000)); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). A plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).[6]

There are three elements of standing: "a plaintiff must show [1] that it suffered an injury in fact that is [2] causally connected to the conduct complained of and [3] redressable by court action." *See Callaway Manor Apartments, Ltd. v. United States*, 940 F.3d 650, 657 (Fed. Cir. 2019) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).[7] The government contends that the second of those elements — a causal connection between the defendant's alleged conduct and plaintiff's injury — is missing because CanPro's damages were caused by the SSA's visitors, third parties whose acts cannot be attributed to the government. *See* Def.'s Mot. No. 3 at 23–29. It characterizes visitors as "third parties" who made "independent choices" about whether to visit the SSA office at One Park Place. *Id.* at 2, 29.

The government is correct that "standing is substantially more difficult to establish when it depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Cierco v. Mnuchin*, 857 F.3d 407, 418 (D.C. Cir. 2017) (quoting *Lujan*, 504 U.S. at 562 (internal quotes omitted)). However, "[s]tanding may exist where … some third party action is the result of the 'determinative or coercive effect' of a government action directed at the third party." *Emerald,* 54 Fed. Cl. at 680–83 (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).

---

[6] A plaintiff is initially entitled to the presumption that "all of the factual allegations … [are] true and correct." *Morris v. United States*, 33 Fed. Cl. 733, 741–42 (1995). But a plaintiff loses the benefit of this presumption if the defendant "mounts a factual challenge to the facts upon which jurisdiction is premised[.]" *Id.* at 742. The Court may then look outside the complaint to resolve factual questions related to jurisdiction. *Id.*

[7] This Court, "though an Article I court, … applies the same standing requirements enforced by other federal courts created under Article III." *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003); *see also Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009); *Emerald Intern. Corp. v. United States*, 54 Fed. Cl. 674, 677 (2002).

So were the SSA's visitors true third parties, or were their allegedly harmful acts somehow determined by the government?

The government's argument has merit up to a point. It is straightforward — and CanPro concedes — that damages caused by individual visitors' *behavior* cannot be attributed to the government. Tr. at 22; *Cierco*, 857 F.3d at 418. Whatever the reasons that individuals might come to a SSA office, there is no basis in the record to think that the government determines how the people act when they are there. That means there is no "fairly traceable" connection between alleged injuries caused by visitor misconduct and any action on the government's part. *Cierco*, 857 F.3d at 415 (quoting *Lujan*, 504 U.S. at 555). CanPro therefore lacks standing to pursue the government over those injuries, and any claims based on those types of harms must be dismissed for lack of jurisdiction.[8]

But some of CanPro's claims rest on the sheer volume of SSA's visitors, not their behavior. As to those claims, the analysis is different for two reasons.

First, this Court has twice held that the lease's reference to "normal and customary" use, in conjunction with other provisions, places an upper limit on anticipated attendance at the SSA office. *See* Order & Opinion at 13, 23–25; Opinion & Order on Motion for Reconsideration (ECF 32) at 6 ("In sum, the existence of a provision addressing the 'normal and customary use' of the premises (whatever it may be), the incorporation of building specifications into the lease, and basic common sense — or any of these, standing alone — indicate that defendant cannot plausibly argue that the parties reasonably expected an unlimited number of daily visitors to the SSA office at One Park Place."). Those legal conclusions are now law of the case, and should not be "reopen[ed] or reconsider[ed]" except under "extraordinary circumstances." *Haddock v. United States*, 161 Fed. Cl. 6, 21 (2022) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)); *see also Hunt Const. Grp., Inc. v. United States*, 281 F.3d 1369, 1372 (Fed. Cir. 2002) (explaining that contract interpretation is a question of law). The government provides no good basis to reverse course.

---

[8] As mentioned above, the Supreme Court requires plaintiffs to "demonstrate standing for each *claim* that they press and for each *form of relief* that they seek (for example, injunctive relief and damages)." *TransUnion*, 141 S. Ct. at 2208 (emphasis added); *see also Davis*, 554 U.S. at 734; *Friends of Earth*, 528 U.S. at 185; *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). But the Supreme Court has also explained that causation of injuries by third-party acts goes to standing too. *Bennett*, 520 U.S. at 169; *Lujan*, 504 U.S. at 560–62. That implies that particular items of requested damages can be rejected for lack of standing even if they are part of a claim, and constitute a form of relief, that the plaintiff otherwise has standing to pursue. In other circumstances, failure to attribute injury to a defendant requires dismissal on the merits. *See infra* II.A.

Second, the government had the power to compel attendance at the SSA office, and in fact did so. Although the SSA cannot turn people away, Def.'s Mot. No. 3 at 5 ¶ 9, the government concedes that in certain circumstances, in-person attendance at SSA offices is required. *Id.* at 6 ¶ 17. The government's in-person attendance requirement therefore presumably had a "determinative or coercive effect" on at least some third parties' decisions to visit the SSA office. *Bennett*, 520 U.S. at 169.

The record thus shows that the lease placed an upper limit on attendance at the SSA office, and that the government required some people to attend in person. Because the government compelled visitor attendance that allegedly contributed to violations of the lease's limits, the government cannot disclaim, as a matter of law, damages from excess attendance (if any) as involving purely independent acts of third parties. CanPro therefore has standing to seek damages for those claims.[9]

### B. Contract Disputes Act presentment

The government also argues that CanPro's claims for economic damages should be dismissed because CanPro failed to present them to the contracting officer with sufficient specificity. Def.'s Mot. No. 4 at 13–19. The government is correct, and so the inadequately presented claims must be dismissed for lack of jurisdiction.

When the CDA applies, presentment of claims to the contracting officer is a jurisdictional prerequisite to suits against the government in this Court. *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541–42 (Fed. Cir. 1996); *W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338–39 (Fed. Cir. 1983); *see also* 41 U.S.C. §§ 7103(a), 7104(b). To meet the presentment requirements of the Federal Acquisition Regulations ("FAR"), a claim to a contracting officer must be "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money *in a sum certain*, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract." FAR 52.233-1(c) (codified at 48 C.F.R.) (emphasis added); *see also Creative Mgmt. Servs., LLC v. United States*, 989 F.3d 955, 962 (Fed. Cir. 2021) ("[A] CDA claim … must state a 'sum certain.'"). "The law does not require that a CDA claim identify a precise monetary amount to state a 'sum certain.'" *Creative Mgmt.*, 989 F.3d at 962. It is enough when "the contracting officer can determine the amount claimed by a simple mathematical calculation." *Id.* (quoting *Modeer v. United States*, 68 Fed. Cl. 131, 137 (2005)). But the claim must provide "a clear and unequivocal statement that gives

---

[9] I reserve decision on whether particular items of alleged damage were caused by visitor numbers or visitor conduct, as well as questions regarding the limit on attendance contemplated by the lease, the actual number of attendees, the existence and quantum of damages caused by any excess visitor traffic, and related issues.

the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987). The claim must also include "supporting documents that would … allow[] the contracting officer to substantiate the claim." *JEM Transport, Inc. v. United States*, 120 Fed. Cl. 189, 198 (2015) (citing *J.P. Donovan Constr., Inc. v. Mabus*, 469 F. App'x 903, 908 (Fed. Cir. 2012)); *see also Creative Mgmt.*, 989 F.3d at 963.

CanPro's second CDA claim referenced "millions of dollars in damages" caused by, *inter alia*, "excess volume of occupants," "loss of reputation[,] and loss of revenue." Pl.'s Ex. D at 6–8. CanPro attached and incorporated by reference a copy of its Seventh Amended Initial Disclosures, *id.* at 8, which asserts damages in a range of $36,332,000 to $41,332,000 for loss of tenants, loss of property value, and other lost profits, *id.* at 336. None of those categories of damages satisfies CDA presentment requirements.

To begin with, the record does not reflect that any of them were supported by documentation of any kind. CanPro did not provide any evidence that it had lost profits or property value at all, much less material sufficient for "mathematical calculation" of a particular amount. *Creative Mgmt.*, 989 F.3d at 962. In addition, the latter two categories of damages in CanPro's second CDA claim were not presented as a "sum certain." FAR 52.233-1(c). CanPro requested a specific (albeit unsubstantiated) sum for loss of tenants: $16,332,000. *See* Pl.'s Ex. D at 335. But as to lost property value and other lost profits, CanPro avoided committing to a particular figure. It presented the first as a $5 million range. *See id.* at 336 (asserting $20–$25 million in "Loss of Property Value"). CanPro stated its lost profits were "TBD," with no dollar value at all. *Id.* (referring to "[o]ther Lost Profits (i.e., other lost revenues, incremental operating expenses, etc.)").

In its claim to the contracting officer, CanPro purported to "reserve[] the right to amend [its] claim for damages as the litigation progresses." *See id.* at 8. CanPro relied especially on the future opinions of yet-to-be-disclosed litigation experts. *See id.* at 336. CanPro still has not identified its experts, let alone their opinions and calculations. But CanPro nonetheless continues to argue that it needs additional time for discovery because its damages will be proven by testimony from experts and possibly additional building tenants. Tr. at 8, 37. There are several problems with that approach.

Rule 56(d) allows this Court to defer or deny a motion for summary judgment (or take other appropriate action) when the nonmovant "cannot present facts essential to justify its opposition[.]" RCFC 56(d). But the nonmovant in such circumstances must bring an "affidavit or declaration" containing "specified reasons"

why the facts are unavailable. *Id.*; *see also Clear Creek Cmty. Servs. Dist. v. United States*, 100 Fed. Cl. 78, 82–83 (2011); *Padilla v. United States*, 58 Fed. Cl. 585, 593 (2003); *Theisen Vending Co. v. United States*, 58 Fed. Cl. 194, 198 (2003). CanPro cannot simply avoid summary judgment with lawyer argument for additional discovery. In any event, CanPro has already had ample opportunity to conduct extensive discovery, including RCFC 30(b)(6) depositions, *see e.g.*, Pl.'s Ex. D at 197, 317, 323, and CanPro gives no reason why it has not yet obtained the discovery it thinks necessary.

More fundamentally, CanPro's request for additional discovery to make up for shortcomings in its CDA claim is exactly backwards. The point of the CDA presentment requirement is not for government contractors to check a box before expert discovery; it is to give the contracting officer notice and the opportunity to pay a "sum certain." FAR 52.233-1(c). If the contractor does not follow that requirement, there is no jurisdiction in this Court in the first place; ergo no litigation, and no expert discovery for the parties to look forward to. *See Creative Mgmt.*, 989 F.3d at 962. It follows that even when computation of damages from an alleged breach requires expert analysis, the time to produce that analysis is at the time of presentment. Because CanPro tried to save for litigation something that it should have presented to the contracting officer, there is nothing for this Court to do but dismiss the defective aspects of CanPro's case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514 (1868)).

### III.   Dismissal of Certain Claims and Items of Damages

The government also argues that it is entitled to summary judgment as to some — though not all — of the items of damage CanPro alleges.[10] To win a claim for breach of contract, "a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irrigation & Drainage Dist. v.*

---

[10] A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). After the moving party satisfies its initial burden of production, the burden of production shifts to the nonmoving party to put forth proof that there is a genuine dispute as to a material fact. RCFC 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive the government's motion for summary judgment, CanPro "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

*United States*, 877 F.2d 957, 959 (Fed. Cir. 1989); *see also Chevron U.S.A. Inc. v. United States*, 160 Fed. Cl. 583 (2022). The government can obtain summary judgment dismissing a claim if there is no genuine issue of material fact on each of those elements and the government is entitled to judgment as a matter of law. RCFC 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). I agree that certain claims should be dismissed.

There is no dispute that the lease was a contract between the parties; in addition, as mentioned above, whether the government breached any duty to limit SSA office attendance depends on contested factual questions that cannot be resolved at summary judgment. *Supra* note 9; *see also, e.g.*, *H.N. Wood Products, Inc. v. United States*, 59 Fed. Cl. 479, 489 (2003). The government mainly argues instead that CanPro cannot establish that its alleged damages were *caused* by excess attendance. Def.'s Mot. No. 3 at 39.

To prove causation of given items of damages, CanPro must show (1) the damages were reasonably foreseeable at the time of contracting, (2) the damages were caused by the breach, and (3) the damages estimates are reasonably certain. *Chevron*, 160 Fed. Cl. at 590; *cf. Shell Oil Co. v. United States*, 130 Fed. Cl. 8, 34–36 (2017), *aff'd*, 896 F.3d 1299 (Fed. Cir. 2018). The "plaintiff must show that but for the breach, the damages alleged would not have been suffered."[11] *San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557, 1563 (Fed. Cir. 1997); *see also Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268, 1272 (Fed. Cir. 2008). The government prevails at summary judgment if there is no genuine dispute that CanPro will be unable as a matter of law to prove those elements.

### A. Claims as to certain items of damages may be dismissed

CanPro has conceded that it lacks evidence demonstrating that certain items of alleged damages were caused by excess visitor volume. CanPro has not made the showing necessary for additional discovery as to causation of any of those items. *See* RCFC 56(d). Because CanPro "fail[ed] to make a showing sufficient to establish the

---

[11] The Federal Circuit has affirmed two tests for assessing if damages were caused by a breach: the "but-for" test and the "substantial causal factor" test. *Citizens Federal Bank v. United States*, 474 F.3d 1314, 1318 (Fed. Cir. 2007); *see also Shell*, 130 Fed. Cl. at 35–36. The selection of the appropriate standard "depends on the facts of the particular case and lies largely within the trial court's discretion." *Citizens Federal Bank*, 474 F.3d at 1318. The but-for test is preferable in most circumstances. *Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268, 1272–73 (Fed. Cir. 2008). The substantial-factor test may be useful "when Defendant asserts multiple causes for claimed damages." *Northeast Savings FA v. United States*, 91 Fed. Cl. 264, 327 (2010) (citing *Energy Capital v. United States*, 47 Fed. Cl. 382, 395 (2000), *aff'd in part and rev'd in part on other grounds*, 474 F.3d 1314, 1319 (Fed. Cir. 2007)); *see also Am. Sav. Bank, F.A. v. United States*, 98 Fed. Cl. 291, 301 (2011); *Citizens Federal Bank, FSB v. United States*, 59 Fed. Cl. 507 (2004).

existence of an [essential] element," namely causation, the Court grants the government's motion for summary judgment as to the following items of damages: work on the SSA employee entrance, construction of a new crosswalk, and installation of new handrails. *Celotex*, 477 U.S. at 322.

   *1. Special employee entrance*

CanPro alleges that it spent $6,683.48 on "special requirements for [a] SSA employee entrance." Pl.'s Ex. D at 334. The government argues that CanPro cannot show that expense resulted from the allegedly excessive number of visitors because visitors were not permitted to use the employee entrance. Def.'s Mot. No. 3 at 32.

The record contains an affidavit from the Assistant District Manager of the SSA office at One Park Place, Pamela Jannuzzi, stating that the door was designated exclusively for SSA employees, vendors, and maintenance personnel. *See* Def.'s App'x No. 3 at 149–50 ¶¶ 11, 12. Ms. Jannuzzi stated that the door was repaired because it failed to securely close, which permitted any person in the common area to access the office and thereby created a security risk. *Id.* Nothing in the record connects that risk to the *number* of visitors to the SSA office. At most, CanPro argued that the "sheer overflow" led CanPro to repair the employee entrance, but it could not point to any evidence in the record to show that nonemployees were using the employee entrance. Tr. at 25.

As such, there is no genuine issue of fact as to whether the increased number of visitors resulting from the alleged breach was the but-for cause of CanPro's decision to spend money on changes to the SSA employee entrance. *See San Carlos*, 111 F.3d at 1563; *Yankee*, 536 F.3d at 1272. Because CanPro has no evidence on causation as to that portion of its case, summary judgment for the government is appropriate. *Celotex*, 477 U.S. at 322–23.

   *2. Crosswalk*

CanPro alleges that it spent $15,397 constructing a crosswalk with speed bumps. Pl.'s Ex. D at 334. The government argues that the installation of the crosswalk had nothing to do with visitor volume. Def.'s Mot. No. 3 at 31.

CanPro does not point to any causal relationship between the number of visitors and the installation of the crosswalk. In fact, CanPro admits the opposite: Ofer Drucker, CanPro's Vice President of Finance, conceded that even without a breach of the lease resulting in an increased number of visitors, CanPro would have installed the crosswalk. Def.'s App'x No. 3 at 37–38 ("Even if I had only one guy with a walker crossing the road, I didn't want them to danger their life. That's why we put it there. Wasn't related to the numbers."). Thus, no genuine issue of fact exists as to

causation, and the government is entitled to summary judgment. *See Celotex*, 477 U.S. at 322–23; *San Carlos*, 111 F.3d at 1563; *Yankee*, 536 F.3d at 1272.

### 3. Courtyard handrails

CanPro asserts that it spent $875 installing special handrails in the courtyard. Pl.'s Ex. D at 334. As observed by the government, CanPro's only documentation appears to be an invoice for $400 from 2013, well before the office closure that led to increased visitor traffic at the SSA office at One Park Place. Def.'s App'x No. 3 at 145. CanPro does not identify any causal relationship between the number of visitors and the earlier installation of courtyard handrails. Thus, no genuine issue of fact exists as to causation, and the government is entitled to summary judgment. *See Celotex*, 477 U.S. at 322–23; *San Carlos*, 111 F.3d at 1563; *Yankee*, 536 F.3d at 1272.

## B. Claims as to other items of damages cannot be dismissed

The government does not move for summary judgment as to each item of damages CanPro identifies, *e.g.*, CanPro's alleged $6,745.12 for security equipment and cameras, or the $7,767 for digital keypads. Def.'s App'x No. 3 at 18; Tr. at 57. There are also some items where the government has not shown the absence of any genuine issues of fact, and therefore is not entitled to judgment as a matter of law. The government has not met its burden as to the following items of damages: security guards, air quality testing, and building maintenance.

### 1. Security guards

CanPro alleges that it spent $181,919.76 on additional security guards. Pl.'s Ex. D at 334. The government provided a security guard of its own. But Mr. Drucker testified that because the government's security guards did not act in ways appropriate for the commercial setting, he had to "send [the guards] back after and hire my own people and train them … for the concierge just to control the crowd coming to see the Social Security." Def.'s App'x No. 3 at 25. By the end of 2014, first-floor security was conducted exclusively by CanPro. Def.'s App'x No. 3 at 149 ¶ 8.

The government argues that because CanPro chose to hire its own security guards rather than accept government-provided guards, the costs were not connected to the excessive number of visitors. Def.'s Mot. No. 3 at 34. But that involves factual questions going to causation: Given that the government had already hired guards, was CanPro's decision caused by the volume of visitors, or was it an independent decision?[12] The evidence that the government's security measures were insufficient

---

[12] As mentioned above, although this Court and the Federal Circuit usually consider causation under a but-for test, they sometimes apply a substantial-factor test when there is a dispute about what factor caused given damages. *Northeast Savings*, 91 Fed. Cl. at 327.

to manage visitor traffic from CanPro's perspective shows that there is a genuine dispute on the question, precluding summary judgment on this item of damages. Def.'s App'x No. 3 at 25.

### 2. Air quality

CanPro alleges that it spent $850 on testing air quality for the SSA office in response to a complaint following replacement of carpet in the SSA office suite. Pl.'s Ex. D at 334. The government argues that CanPro cannot show a causal connection between the excessive number of visitors and the air quality testing. Def.'s Mot. No. 3 at 31. But that is not enough to shift the burden of production onto CanPro. *See Celotex*, 477 U.S. at 322; *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994). Perhaps the air-quality complaint resulted from the government's alleged breach — for example, if the carpet replacement that led to the air quality complaint resulted from excessive visitor traffic. The government has thus failed to show that it is entitled to judgment as a matter of law.

### 3. Building maintenance

CanPro alleges approximately $55,000 spent on the replacement of carpet, new wallcovering, and cleaning supplies as a result of excess visitor volume. Pl.'s Ex. D at 334. The government argues that CanPro cannot demonstrate that the damage to the carpet and wallcovering could have resulted from an excessive number of visitors, especially in areas other than the fourth floor where the SSA office is located. Def.'s Mot. No. 3 at 32–33. Nonetheless, it remains at least plausible that foot traffic led to wear and tear on interior surfaces.[13] That leaves a genuine issue of material fact, precluding summary judgment, on whether CanPro's building maintenance costs result from excess visitor traffic.

### C. CanPro's "superior knowledge" claim

The government moved to dismiss CanPro's "superior knowledge" claim for failure to state a claim. Def.'s Mot. No. 4 at 32–34. I conclude that the claim is well pleaded and cannot be dismissed.

The superior-knowledge doctrine "imposes upon a contracting agency an implied duty to disclose to a contractor otherwise unavailable information regarding some novel matter affecting the contract that is vital to its performance." *Giesler v. United States*, 232 F.3d 864, 876 (Fed. Cir. 2000) (quoted in *Scott Timber Co. v. United States*, 692 F.3d 1365, 1373 (Fed. Cir. 2012)). SSA's plans to permanently close a nearby SSA location might meet that standard. *Id.*

---

[13] Although it is not evidence, CanPro claimed at argument that excess visitor traffic spread to different parts of the building. Tr. at 8.

The government argues that the superior-knowledge doctrine does not apply because closures were not definitive facts at the time of contracting, *see* Def.'s Mot. No. 4 at 33 (citing *Hardwick Bros. Co., II v. United States,* 36 Fed. Cl. 347, 393 (1996)), and because the GSA cannot be imputed with knowledge of SSA offices, *id.* at 33–34. But CanPro alleges that the GSA knew or should have known that SSA expected closures of offices in the surrounding areas and that the GSA therefore knew or should have known to expect that the number of visitors to the SSA office would exceed 250 per day. Am. Compl. at 5. These factual allegations are sufficient to demonstrate that the SSA's plans could qualify as "otherwise unavailable information regarding some novel matter affecting the contract that is vital to its performance." *Giesler*, 232 F.3d at 876. Thus, the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see also* RCFC 8(a)(2). CanPro's superior knowledge claim cannot be immediately dismissed; it must be decided at summary judgment or trial.

## CONCLUSION

The portion of Defendant's Motion No. 2 currently pending before this Court (§ II.B) is **DENIED AS MOOT**. Defendant's Motion No. 3 is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion No. 4 is **GRANTED IN PART** as to jurisdiction arising from Plaintiff's second CDA claim and to the extent its arguments overlap with Motion No. 3, and otherwise **DENIED**. The parties are **ORDERED** to confer and to submit a status report proposing additional proceedings no later than **March 10, 2023**.

**IT IS SO ORDERED**.

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge